# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|                          |   |                         |
|--------------------------|---|-------------------------|
| UNITED STATES OF AMERICA | : |                         |
|                          | : |                         |
|                          | : | CRIMINAL ACTION FILE NO. |
| v.                       | : | 1:21-cr-00328-MLB-RGV   |
|                          | : |                         |
|                          | : |                         |
| BRIAN SPERBER            | : |                         |

## MAGISTRATE JUDGE'S REPORT, RECOMMENDATION, AND ORDER

Defendant Brian Sperber ("Sperber") is charged in a ten-count indictment with four counts of wire fraud, in violation of 18 U.S.C. §§ 2 and 1343; conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349; conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956; two counts of money laundering, in violation of 18 U.S.C. §§ 2 and 1956(a)(1)(A)(i); and two counts of money laundering, in violation of 18 U.S.C. §§ 2 and 1957.  [Doc. 1].[1]  Sperber has filed a motion to hire counsel of choice, [Doc. 23], a motion to release seized funds, [Doc. 24], which he amended, [Doc. 30], and a motion to dismiss counts of the

---

[1] The indictment also contains a forfeiture provision pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1), as well as 28 U.S.C. § 2461(c).  [Doc. 1 at 17-19].  The listed document and page numbers in citations to the record refer to the document and page numbers shown on the Adobe file reader linked to the Court's electronic filing database, CM/ECF.

indictment, [Doc. 25].   The government has filed a response in opposition to the amended motion to release seized funds, [Doc. 37], and Sperber has filed a reply, [Doc. 38].  Sperber did not perfect his motion to dismiss, [Doc. 25], within the time allowed by the Court, see [Doc. 26], so the motion is deemed to have been abandoned, and the Clerk is **DIRECTED** to terminate the motion.  For the reasons that follow, it is **RECOMMENDED** that Sperber's motion to hire counsel of choice, [Doc. 23], and his motion to release seized funds, [Doc. 24], as amended, [Doc. 30], be **DENIED**.

## I.  FACTUAL BACKGROUND

The pending motions in this case pertain to the seizure of property located at 311 East Key Palm Road, Boca Raton, Florida 33432 (the "Boca Raton property"), which was the subject of a civil forfeiture action filed by the United States on March 11, 2021, on the grounds that the property was subject to forfeiture as proceeds of wire fraud and as property involved in a money laundering transaction or attempted money laundering transaction committed by Sperber or as property traceable to such property.  See United States v. Real Property at 311 East Key Palm Road, Civil Action No. 1:21-cv-01008-AT, [Doc. 1] (N.D. Ga. Mar. 11, 2021) ("Civil Forfeiture Action" or "CFA").  The complaint in the Civil Forfeiture Action, which was verified by Special Agent Bradley Rhoden of the

Federal Bureau of Investigation ("FBI"), [id. at 18], alleged that from approximately September 2019, until at least the purchase of the Boca Raton property in or around May 2020, Sperber used payments made to him by customers for the purchase of personal protective equipment ("PPE") to, instead, substantially fund the purchase of the Boca Raton property, among other things, [id. ¶¶ 12-77]. The complaint further alleged that the Boca Raton property was purchased in the name of Roses Ark LLC ("Roses Ark"), which was an entity organized in the State of Florida by Sperber's wife, Paulina Lacs Franco ("Franco"). [Id. ¶¶ 3, 16]. In particular, the complaint alleged that Franco purchased the Boca Raton property for $10 million, split between a down payment of approximately $5 million and a $5 million mortgage, [id. ¶ 62], and that "[t]he investigation revealed that approximately $4.3 million of the down payment was funded by proceeds of the fraudulent schemes," [id. ¶ 63].

On April 7, 2021, Avatar Key Palm Residence LLC ("Avatar") filed a claim to the Boca Raton property as the holder of a mortgage on the property that was used to secure a $6.1 million loan by Roses Ark. See CFA, [Doc. 15] (N.D. Ga. Apr. 7, 2021). On May 5, 2021, Roses Ark also filed a claim to the Boca Raton property as the owner of the property. See CFA, [Doc. 22] (N.D. Ga. May 5, 2021). The claim was verified by Franco as the "Managing Member" of Roses Ark. [Id. at 2].

3

Although notice of the filing of the Civil Forfeiture Action was provided to Sperber, see CFA, [Doc. 8] (N.D. Ga. Apr. 2, 2021), he did not file a claim to the Boca Raton property or otherwise contest the forfeiture of the property or assert any rights in the Civil Forfeiture Action.

On May 28, 2021, the United States and Roses Ark jointly moved for an Order, authorizing the immediate sale of the Boca Raton property because the property was at risk of deterioration or decay.  See CFA, [Doc. 26] (N.D. Ga. May 28, 2021).  On June 4, 2021, the Honorable Amy Totenberg, United States District Judge, granted the parties' joint motion.  See CFA, [Doc. 27] (N.D. Ga. June 4, 2021).  Pursuant to the Order, Avatar's outstanding loan was to be satisfied upon the sale of the property, and the U.S. Marshals Service was ordered to hold the net proceeds of the sale pending further instruction from the Court.  [Id. at 2-3].  On or about June 8, 2021, the Boca Raton property sold for $12 million, and after satisfaction of the Avatar loan, the U.S. Marshals Service currently is holding net proceeds in the amount of $4,915,704.39 as substitute res.  [Doc. 30 at 2; Doc. 37 at 3].  On July 30, 2021, Judge Totenberg entered an Order, administratively closing the Civil Forfeiture Action upon an unopposed motion filed by the government seeking to stay the action pending the resolution of the related criminal investigation.  See CFA, [Doc. 31] (N.D. Ga. July 30, 2021).

On August 25, 2021, a grand jury in the Northern District of Georgia returned the instant ten-count indictment against Sperber, charging him with conspiracy to commit wire fraud, wire fraud, conspiracy to commit money laundering, and money laundering.  See [Doc. 1].  The conduct underlying these charges is the same as alleged in the Civil Forfeiture Action, and the indictment specifically charges that Sperber "defrauded prospective PPE purchasers out of more than $12 million, much of which he used for his own personal benefit, which included purchasing a waterfront mansion in early 2020," i.e., the Boca Raton property.  [Id. ¶ 9].  The indictment also includes a forfeiture provision that identifies $4,915,704.39 as cash/currency in lieu of the Boca Raton property as property subject to forfeiture as proceeds of the scheme and as property involved in the money laundering offenses, or property traceable to such property.  [Id. ¶¶ 39-40].

Following his arraignment on August 31, 2021, see [Doc. 4], Sperber sought and was granted several extensions of time to file pretrial motions, [Docs. 12, 16, & 20], and on January 13, 2022, he filed his original motion to release seized funds, [Doc. 24], along with a motion to hire counsel of choice, [Doc. 23], and a motion to dismiss counts of the indictment, [Doc. 25].  At the pretrial conference on January 14, 2022, the Court afforded Sperber the opportunity to perfect his motion to

dismiss counts and his motion to release seized funds, explaining, with respect to the latter motion, that he was required to make a preliminary showing that he is financially unable to hire counsel from resources other than the seized property and that he is entitled to a pretrial hearing regarding the restrained property because it was improperly seized. See [Doc. 26].  Sperber did not perfect his motion to dismiss counts, [Doc. 25], but sought and was granted an extension of time to perfect his motion to release seized funds, [Docs. 27 & 28], and he filed his amended motion to release funds on March 17, 2022, [Doc. 30], along with a notarized "Monthly Cash Flow Statement" and a notarized "Net Worth Statement," which he filed under seal, [Doc. 31 (emphasis and all caps omitted)]. The government opposes the amended motion to release seized funds, [Doc. 37], and Sperber has filed a reply in support of his motion, [Doc. 38].

## II.  DISCUSSION

In his amended motion to release seized funds, Sperber moves for the release of approximately $700,000 in funds that he contends are untainted and were unlawfully seized in connection with the forfeiture proceedings against the Boca Raton property so that he may hire counsel of his choice.  [Doc. 30 at 1, 4]. Specifically, Sperber contends that since the government alleged in the complaint filed in the Civil Forfeiture Action that Sperber's wife, Franco, purchased the Boca

Raton property for $10 million, split between a down payment of approximately $5 million and a $5 million mortgage, [id. at 2 (citing CFA, [Doc. 1 ¶ 62])], and "[t]he investigation revealed that approximately $4.3 million of the down payment was funded by proceeds of the fraudulent schemes," [id. (alteration in original) (citing CFA, [Doc. 1 ¶ 63])], the "power of deductive reasoning reveals" that "$700,000 is untainted," [Doc. 38 at 2]. Sperber argues that the Supreme Court's ruling in Luis v. United States, 578 U.S. 5 (2016), requires the release of the untainted funds because the "pretrial restraint of legitimate, untainted assets needed to retain counsel of choice violates the Sixth Amendment." [Doc. 30 at 3 (internal marks omitted) (quoting Luis, 578 U.S. at 10)]. Relying on Kaley v. United States, 571 U.S. 320 (2014), as well as United States v. Farmer, 274 F.3d 800 (4th Cir. 2001), and United States v. Jones, 160 F.3d 641 (10th Cir. 1998), Sperber also argues that he is entitled to a pretrial "hearing where the government will have the burden of showing by competent evidence that the funds seized are traceable to criminal conduct." [Id. at 7].[2]

_____

[2] Sperber advances a third argument based on Justice Kagan's dissent in Luis that the Supreme Court's ruling in United States v. Monsanto, 491 U.S. 600 (1989), should be overruled, [Doc. 30 at 8-9], but, as he appears to concede, "it is too much to ask that the Court overrule *Monsanto*," [id. at 9], and this argument is not further addressed.

The government opposes Sperber's motion, arguing that he seeks "to release a portion of funds that [ he] previously agreed should be held in lieu of real property that [ he] and his wife purchased with the proceeds of the fraudulent scheme charged in the [c]riminal [i]ndictment," and since "neither *Luis* . . ., nor the Sixth Amendment, provide a basis on which to compel the . . . release [of] the restrained asset, the Court should deny [ his] motion, without a hearing." [Doc. 37 at 1 (emphasis omitted)]. The government asserts that the Boca Raton property is subject to forfeiture both as "property, real or personal, constituting or derived from proceeds traceable to wire fraud violations[, ]pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)[,]" and "as property real or personal involved in a money laundering offense, or any property traceable to such property, pursuant to 18 U.S.C. § 982(a)(1)," and there has been "no concession by the [g]overnment that the Boca Raton [p]roperty is in any part an untainted asset." [Id. at 5 (internal marks omitted)]. Accordingly, the government contends that "*Luis* does not apply here, and the entirety of the substitute res is properly restrained as directly forfeitable assets that cannot be released for attorney's fees prior to trial." [Id. at 6]. The government further argues that Sperber "has failed to meet his threshold burden of adequately demonstrating his inability to afford his counsel of choice," either personally or with the assistance of family members,

8

and therefore, "he is not entitled to a tracing hearing," and his motion should be denied.  [Id. at 7].  The government also points out that it would be Sperber's burden at a tracing hearing to prove that the substitute res is not connected to the charged offense, not the government's burden to prove otherwise as Sperber contends.  [Id. at 11 n.1 (citation omitted)].

In his reply, Sperber reiterates his argument based on the allegations of the complaint in the Civil Forfeiture Action that untainted funds in the amount of $700,000 were used as part of the down payment to purchase the Boca Raton property, and he maintains that Luis requires those funds to be returned to him so that he may hire counsel of his choice.  [Doc. 38 at 1-2].  Sperber also asserts that he has shown that he does not have the financial ability to retain counsel based on the financial affidavit he completed at his arraignment and the financial statements he submitted under seal with his amended motion for return of seized funds, and he objects to the consideration of the assets of his family in evaluating his resources to hire counsel and seeks to maintain under seal the financial information he submitted in support of his motion.  [Id. at 3-5].

Circuit courts have not applied "the same legal standards when deciding whether a defendant is entitled to a hearing" when seeking the release of seized funds, with "[s]ome circuits apply[ing] the factors laid out in Mathews v. Eldridge,

424 U.S. 319 (1976), to determine when due process requires a hearing" and others looking "to alternative sources for guidance," such as the Kaley decision.[3]  United States v. Dortch, No. 17-cr-20155-11-SHM-tmp, 2017 WL 9604649, at *2 (W.D. Tenn. Dec. 20, 2017) (citations omitted), adopted as modified by 2018 WL 1960777, at *5 (W.D. Tenn. Apr. 26, 2018).  However, "it is settled law that a defendant must show a bona fide need to utilize seized assets to conduct his defense in order to be entitled to a hearing."  United States v. Hernandez-Gonzalez, Case No. 16-20669-CR-SCOLA/TORRES, 2017 WL 2954676, at *7 (S.D. Fla. June 26, 2017) (alterations, citation, and internal marks omitted), adopted by 2017 WL 3446815, at *1 (S.D. Fla. Aug. 10, 2017); see also United States v. Bokhari, Criminal Case No. 14-30044-MGM, 2015 WL 7303535, at *4-5 (D. Mass. Nov. 19, 2015) (discussing the Eldridge balancing factors and the Jones-Farmer test, and finding that "[d]efendant's

---

[3] In United States v. Kaley, 579 F.3d 1246 (11th Cir. 2009), the Eleventh Circuit reaffirmed that "a defendant whose assets are restrained pursuant to a criminal forfeiture charge in an indictment, rendering him unable to afford counsel of choice, is entitled to a pretrial hearing only if the balancing test enunciated in Barker v. Wingo, 407 U.S. 514 . . . (1972), is satisfied," id. at 1252 (emphasis omitted) (citing United States v. Bissell, 866 F.2d 1343, 1353 (11th Cir. 1989)).  The Barker factors include the following: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."  Barker, 407 U.S. at 530 (footnote omitted).  "[A]fter weighing the four Barker factors, the district court may grant the defendant's request for a pretrial evidentiary hearing in order to determine whether assets described in the forfeiture count of the indictment were wrongly seized (or placed under the restraint of a protective order)."  Kaley, 579 F.3d at 1257.

10

showing of financial need is crucial if he is to succeed in obtaining a [] hearing" as "it would be anomalous to permit the return of allegedly tainted assets, already found by a grand jury to be forfeitable, to fund a defense if there are alternative untainted assets available for the same purpose").  Indeed, "[a] defendant is not entitled to a hearing as a matter of right and must, instead, make a threshold showing that the restraint infringes on his constitutional right to due process," and "[i]n the context of criminal cases, due process concerns are most frequently triggered when the defendant contends that the government has seized untainted assets and that the defendant needs those assets to pay for counsel of his choice." United States v. Stokes, CRIMINAL ACTION FILE NO. 1:14-CR-290-TWT-JKL-1, 2017 WL 5986231, at *4 (N.D. Ga. Oct. 23, 2017) (citations omitted), adopted by 2017 WL 5971986, at *1 (N.D. Ga. Dec. 1, 2017).  And, "the weight of authority recognizes a defendant will not be entitled [to] a hearing just because he asks for it—he must instead demonstrate that [] there is a true necessity that he have access to the restrained assets," id., which, for the reasons discussed herein, Sperber has failed to do.

When Sperber filed his original motion to release seized funds, he did not address the threshold issue regarding his financial need for the seized funds to hire counsel.  See [Doc. 24].  At the pretrial conference, the Court addressed,

among other things, the requirement that Sperber make a preliminary showing that he is financially unable to hire counsel from resources other than the seized property and afforded him the opportunity to perfect his motion to do so. See [Doc. 26]. In his amended motion to release seized funds, Sperber asserts that he "has demonstrated that he does not have the ability to hire counsel of choice through his financial affidavit," citing Exhibit B to his amended motion, [Doc. 30 at 7], which was filed under seal, [Doc. 31], and the financial affidavit he submitted to the Court at his arraignment, [Doc. 30 at 7]. Although Sperber describes Exhibit B as a "financial affidavit," [id.], the exhibit is simply a notarized "Monthly Cash Flow Statement" and a notarized "Net Worth Statement," [Doc. 31 (emphasis and all caps omitted)], and neither document has been signed under oath, [id. at 4, 10]. Consequently, neither statement constitutes a "financial affidavit," and the barebones financial affidavit he completed at arraignment, which left most entries on the form blank, is insufficient to constitute a "[c]omplete financial disclosure [which] requires that [ he] identify his assets, liabilities, sources of income, net worth, whether he has access to financial accounts, and the expected costs of his defense team."[4] Hernandez-Gonzalez, 2017 WL 2954676, at *6 (citation omitted).

---

[4] Sperber did submit with his amended motion an affidavit from attorney John A. Garland providing an estimate of his fees to represent Sperber. See [Doc. 30-1].

Thus, Sperber "has not proffered any verified financial affidavits for himself in support of his [m]otion and no banking statements that show a lack of available assets."[5]  Id., at *7; see also United States v. Kielar, 791 F.3d 733, 735, 739-40 (7th Cir. 2015) (last two alterations in original) (citations and internal marks omitted) (finding defendant was not entitled to an evidentiary hearing where he failed to present "sufficient evidence to demonstrate a bona fide need" to use the proceeds from the sale of his Florida property, since he "offered no documentary evidence, other than an unsubstantiated affidavit, to demonstrate that the restrained assets were needed to conduct his defense," but the "one-and-a-half-page affidavit [did] not provide enough information, much less enough reliable information" to allow the court to make a finding that the defendant did "not have other assets from which he could pay for his defense," as it is clear "that in order to demonstrate a 'bona fide need' a defendant must do more than submit[] a bare-bones affidavit

---

[5] Sperber asserts that "[t]he government provided [ his] bank records in discovery" and "knows he does not have any resources to hire counsel of his choice," and despite having the records, "the government offered zero evidence that [ he] had the resources to hire counsel of choice."  [Doc. 38 at 4].  However, it is Sperber's burden, not the government's, to make the threshold showing regarding his financial inability to hire counsel of his choice.  See Hernandez-Gonzalez, 2017 WL 2954676, at *7 (citations omitted); see also United States v. $89,866.18, CAUSE NO.: 2:16-CV-42-JEM, 2021 WL 1560813, at *2 (N.D. Ind. Apr. 21, 2021) (collecting cases).

asserting that he personally lack[s] sufficient funds to obtain counsel of his choice").

The financial statements Sperber submitted as Exhibit B include some limited information about his wife's income, see [Doc. 31 at 4], and jointly owned jewelry (without disclosing its value), [id. at 7], but otherwise, he has not addressed whether his wife or any entity she controls have assets available to fund his choice of counsel.  Although Sperber objects to consideration of the assets of his family, see [Doc. 38 at 5], the government persuasively points out that his wife's involvement in the purchase of the Boca Raton property for $10 million, with a $5 million down payment, raises legitimate questions about whether Sperber has access to financial resources through his family that could be used to fund his defense, [Doc. 37 at 9-11], and in the absence of a complete financial affidavit or other verified information, he has not satisfied his burden of making a preliminary showing that he is unable to hire counsel of his choice, see United States v. Bonventre, 720 F.3d 126, 133 (2d Cir. 2013) (finding district court's conclusion that defendant "failed to satisfy the first threshold requirement because he provided insufficient information for a court to evaluate the extent of his unrestrained funds" appropriate where defendant "did not disclose his net worth, provide a comprehensive list of his assets, or explain how he ha[d] been paying his

significant living expenses," and even though "the affidavits describe[d] the aggregate balances of bank accounts enumerated in the government's submissions," they did not "clarify whether [defendant] ha[d] access to other accounts and, if so, their value"); see also United States v. Jamieson, 189 F. Supp. 2d 754, 757 (N.D. Ohio 2002) (explaining that "the district court has the right to inquire into the availability of other assets"; "to wit, does [defendant's spouse] or do other family members or friends have funds which could be made available to the [d]efendant to meet the obligations of retaining counsel and supporting himself and his family").

Even were the Court to credit the limited financial information provided by Sperber and find that he has demonstrated that he does not have the financial resources to hire his counsel of choice, his amended motion to release seized funds would still fail because he has not satisfied the standard for obtaining a hearing on his motion under any of the authorities he has cited. See [Doc. 30 at 7]. Under the Jones–Farmer test, Sperber "is entitled to a post-restraint, pretrial hearing only if (1) []he shows to the court's satisfaction that []he has no assets, other than those restrained, with which to retain private counsel or provide for [himself] and [his] family, and (2) []he make[s] a prima facie showing of a bona fide reason to believe the grand jury erred in determining that the restrained assets would be subject to

forfeiture if [] [he] were convicted." <u>United States v. Mueller</u>, No. 08-CR-0206 (PJS/FLN), 2008 WL 2890258, at *1 (D. Minn. July 18, 2008) (sixth alteration in original) (citations and internal marks omitted). The only argument Sperber has offered with respect to the second <u>Jones–Farmer</u> factor is that since the government alleged in the complaint filed in the Civil Forfeiture Action that his wife purchased the Boca Raton property for $10 million, split between a down payment of approximately $5 million and a $5 million mortgage, [Doc. 30 at 2 (citing CFA, [Doc. 1 ¶ 62])], and "[t]he investigation revealed that approximately $4.3 million of the down payment was funded by proceeds of the fraudulent schemes," [<u>id.</u> (alteration in original) (citing CFA, [Doc. 1 ¶ 63])], the "power of deductive reasoning reveals" that "$700,000 is untainted," [Doc. 38 at 2]. However, this argument is unavailing because even if $700,000 of the funds used to make the down payment were, in fact, untainted, the entire substitute res held by the U.S. Marshals Service remains subject to forfeiture because those funds allegedly were involved in the money laundering transaction regarding the purchase of the Boca Raton property, as charged in the indictment. [Doc. 1]. As the government correctly contends, "the fact that [ it] only traced approximately $4.3 million of fraud proceeds to the ultimate purchase of the Boca Raton property for $10 million, does not transform the property to an untainted asset when it is

subject to forfeiture based on 18 U.S.C. § 982(a)(1) and 18 U.S.C. § 981(a)(1)(A)."
[Doc. 37 at 6 (internal citation omitted) (citing <u>United States v. $688,670.42</u>, 449 F.
App'x. 871, 877 (11th Cir. 2011) (per curiam) (unpublished) (footnote and citation
omitted) ("This court has interpreted 'involved in' in 18 U.S.C. § 982(a)(1), which
contains language nearly identical to § 981(a)(1)(A), to allow forfeiture of not only
the money which was actually laundered but also property used to facilitate the
laundering offense."); <u>United States v. Huber</u>, 404 F.3d 1047, 1056, 1058 (8th Cir.
2005) (citation omitted) (explaining that "[f]orfeiture under [§] 982(a)(1) in a
money laundering case allows the government to obtain a money judgment
representing the value of all property 'involved in' the offense, including 'the
money or other property being laundered (the corpus),' and 'any property used to
facilitate the laundering offense'"); <u>United States v. Miller</u>, 295 F. Supp. 3d 690, 700
(E.D. Va. 2018) (citation omitted) (explaining that "if a money laundering offense
is committed through a purchase or sale of property, the property is 'involved in'
the offense, and that "property is 'involved in' a money laundering offense even
when it is not purchased through that offense"), <u>aff'd</u>, 911 F.3d 229 (4th Cir. 2018))].
Indeed, "[c]ourts have consistently interpreted the phrase 'involved in' in §
982(a)(1) broadly to include the money or property being laundered as well as
property used to commit or to facilitate the money laundering offense or the

underlying unlawful activity," <u>Miller</u>, 295 F. Supp. 3d at 697 (footnote omitted),

and "property involved in a money laundering offense is forfeitable in its entirety,

even if legitimate funds have also been invested in the property," <u>id.</u> at 697-98

(footnote omitted) (citing <u>United States v. Kivanc</u>, 714 F.3d 782, 794–95 (4th Cir.

2013) (citations omitted) ("[W]hen legitimate funds are commingled with property

involved in money laundering or purchased with criminally derived proceeds, the

entire property, including the legitimate funds, is subject to forfeiture.")); <u>see also</u>

<u>United States v. One Single Fam. Residence Located at 15603 85th Ave. N., Lake</u>

<u>Park, Palm Beach Cnty.</u>, 933 F.2d 976, 981-82 (11th Cir. 1991) (explaining that "if

one is a wrongdoer, the full value of the real property is forfeitable because some

of the funds invested are traceable"); <u>United States v. One 1987 Mercedes Benz</u>

<u>300E, VIN: WDBEA30D6HA400110 VA Tag: MVI 688</u>, 820 F. Supp. 248, 252 (E.D.

Va. 1993) (finding defendant was not entitled to the return of a portion of the funds

he claimed were untainted and used to purchase the vehicle, since "the entire

vehicle [] was involved in the money laundering transaction, not merely the funds

traceable" and "it is therefore the entire vehicle that is subject to forfeiture" as "[i]t

often happens that wrongdoers knowingly commingle legitimate funds with

property obtained through a specified unlawful activity" and "often use the cover

afforded by commingled legitimate funds to facilitate the laundering offense" and

18

"[w]hen . . . such commingling occurs, the entire property, including the legitimate funds, is subject to forfeiture").

The indictment specifically charges that Sperber "defrauded prospective PPE purchasers out of more than $12 million, much of which he used for his own personal benefit, which included purchasing a waterfront mansion in early 2020," i.e., the Boca Raton property. [Doc. 1 ¶ 9]. The indictment also includes a forfeiture provision that specifically identifies $4,915,704.39 as cash/currency in lieu of the Boca Raton property as property subject to forfeiture as proceeds of the scheme and as property involved in the money laundering offenses, or property traceable to such property. [Id. ¶¶ 39-40]. Because Sperber has not made "a prima facie showing of a bona fide reason to believe the grand jury erred in determining that the restrained asset[] would be subject to forfeiture if [] [he] were convicted," Mueller, 2008 WL 2890258, at *1 (citations omitted), he has not satisfied the second Jones–Farmer factor and is not entitled to a pretrial hearing regarding the restrained asset.[6]  United States v. Johnson, 683 F. App'x 241, 250 (4th Cir. 2017)

---

[6] Sperber likewise is not entitled to relief under the Luis case as he has not shown that untainted assets are being restrained since the $700,000 portion of the down payment was commingled with the fraud proceeds in the money laundering transaction and the entire substitute res is subject to forfeiture.  Moreover, Sperber simply relies on "deductive reasoning" to argue that the $700,000 is untainted based on an allegation in the complaint in the Civil Forfeiture Action, but he has not proffered any information to support this conclusion or presented an affidavit

(per curiam) (unpublished) (affirming district court's denial of motion for return of seized assets without a hearing where defendant "failed to sufficiently show that her deprivation was erroneous, or that her assets were untainted").

Similarly, after weighing the Barker factors pursuant to the Kaley case, the Court concludes that Sperber is not entitled to a hearing regarding the restrained substitute res.  While the approximately one-year delay since the Civil Forfeiture Action was initiated against the Boca Raton property in March 2021 could support reaching the other factors, see United States v. Dunn, 345 F.3d 1285, 1296 (11th Cir. 2003) (citations omitted) ("A delay is considered presumptively prejudicial as it approaches one year."); United States v. Register, 182 F.3d 820, 827 (11th Cir. 1999) (citing Barker, 407 U.S. at 530) ("The first factor serves a triggering function; unless some 'presumptively prejudicial' period of delay occurred, we need not conduct the remainder of the analysis."), consideration of the remaining factors does not persuade the Court that a hearing is warranted.

The reason for the delay and Sperber's assertion of his rights are somewhat intertwined and do not weigh in favor of granting a hearing.  After the Civil Forfeiture Action was initiated against the Boca Raton property, Sperber was

---

or verified financial statement showing the source of the $700,000 that would support finding that it was, in fact, untainted.

20

notified of the action, see CFA, [Doc. 8], but he did not assert a claim to the property as only Roses Ark filed a claim as the owner, through a claim verified by Sperber's wife, Franco, as the "Managing Member" of Roses Ark, see id., [Doc. 22]. Thus, Sperber did not contest the Civil Forfeiture Action or assert his rights to any portion of the funds used to purchase the Boca Raton property when he had the opportunity to do so in the Civil Forfeiture Action.  Instead, only Roses Ark claimed ownership, but Sperber has argued that the Court should not consider the assets of his wife or other family members in evaluating his ability to hire counsel of his choice, see [Doc. 38 at 5], effectively distancing himself from any interest in the very seized funds that he now contends should be released for his use to hire counsel, see United States v. Ageloff, No. 5:08-cr-32-Oc-10GRJ, 2008 WL 6041380, at *2 (M.D. Fla. Oct. 22, 2008) (explaining that "assuming *arguendo* that the assets belonged to the [d]efendant's parents, the [d]efendant's parents—and not the [d]efendant—would be the interested parties who would have standing to challenge the forfeiture").  Sperber cannot have it both ways.  If he has some ownership interest in the property that was seized, he never asserted those rights in the Civil Forfeiture Action initiated in March 2021 and did not assert his rights in this case until January 13, 2022, more than nine months after the Civil Forfeiture Action was initiated and almost five months after the indictment was returned in

August 2021.  So, the approximately one-year delay between when the Civil Forfeiture Action was initiated and Sperber filed his amended motion to release seized funds in March 2022 is attributable to Sperber and does not weigh in favor of granting a hearing.  On the other hand, if the "untainted" funds do not belong to him but to an entity controlled by his wife, and he contends they should be available for his defense, then a full assessment of his wife's assets is required to evaluate whether there are other funds available to hire counsel for Sperber, but he has not provided that information and even opposes consideration of it, as previously discussed.  And, to the extent his wife's filing of a verified claim in the Civil Forfeiture Action constitutes an assertion of Sperber's rights in that action, he must also accept that the disposition of the asset in that action was with the consent of Roses Ark, which likewise did not oppose the stay of those proceedings pending completion of the criminal investigation that resulted in the indictment in this case.  See CFA, [Doc. 31].  Hence, Sperber has no basis to complain about any delay occasioned by the proceedings in the Civil Forfeiture Action, and although he has asserted his rights to a portion of the substitute res in this action, he did so only after obtaining multiple continuances to file pretrial motions and another continuance to perfect the motion, see [Docs. 11, 12, 15, 16, 19, 20, 26, 27, & 28], and yet still has not properly supported his motion with an adequate

demonstration of his available financial resources or even shown his interest in the seized funds he seeks to have released, see Ageloff, 2008 WL 6041380, at *2.

Finally, the fourth Barker factor weighs against granting a hearing because Sperber has not demonstrated prejudice since he has not made a sufficient showing that the substitute res has been unlawfully restrained. As previously discussed, his only argument is that since the government alleged in the Civil Forfeiture Action that it had traced $4.3 million of the $5 million down payment to fraud proceeds, the remaining $700,000 is untainted, but his "deductive reasoning" argument fails to account for the legal basis on which forfeiture is sought with respect to the money laundering charges of the indictment. He has offered no argument or authority to refute the government's contention that the entire substitute res is subject to forfeiture under 18 U.S.C. §§ 981(a)(1)(A) and 982(a)(1) as property involved in the money laundering offense, even if the $700,000 was "untainted" by the fraudulent scheme. Moreover, since Sperber has offered no explanation for his ownership interest in any of the "untainted" funds used to purchase the Boca Raton property, he has not demonstrated any prejudice from their continued restraint. See Ageloff, 2008 WL 6041380, at *2 (finding that "[w]hile the [d]efendant is not entitled to a hearing under the current law in the Eleventh Circuit, even if he was, the [d]efendant has not raised any arguments in

his motion, which call into question the propriety of the seizure of the assets"). Consequently, Sperber has not shown that a hearing is warranted under the analysis of the Barker factors in the Kaley case, and his motion to release seized funds, [Doc.24], as amended, [Doc. 30], and the related motion to hire counsel of choice, [Doc. 23], are due to be denied.[7]

### III.   CONCLUSION

For the foregoing reasons, the Clerk is **DIRECTED** to terminate Sperber's motion to dismiss counts, [Doc. 25], as abandoned, and it is **RECOMMENDED** Sperber's motion to hire counsel of choice, [Doc. 23], and his motion to release seized funds, [Doc. 24], as amended, [Doc. 30], be **DENIED**.

There are no other pending matters before the Magistrate Judge, and the undersigned is aware of no problems relating to the scheduling of this case.

---

[7] In his motion to hire counsel of choice, [Doc. 23], Sperber asserts that he "has been unable to hire counsel of choice" because his "assets have been unlawfully seized," and he moves the "Court to allow [ him] to hire counsel of choice after untainted seized funds are released," [id. at 1], advancing essentially the same arguments presented in his original motion to release seized funds, see [Doc. 24]. Since Sperber's motion to hire counsel of choice, [Doc. 23], is contingent upon his unsuccessful motion to release seized funds, [Doc. 24], as amended, [Doc. 30], the motion to hire counsel of choice, [Doc. 23], likewise is due to be denied.

**IT IS THEREFORE ORDERED** and **ADJUDGED** that this action be and the same is hereby, certified Ready for Trial.

**IT IS SO ORDERED** and **RECOMMENDED**, this 13th day of June, 2022.

_Russell G. Vineyard_
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

25